# UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

---

No. 96-20419

---

CARL G. MUELLER, JR.,

Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA,

Defendant-Appellee.

---

Appeal from the United States District Court
For the Southern District of Texas
(H-95-CV-3641)

---

June 10, 1997

Before POLITZ, Chief Judge, WIENER and STEWART, Circuit Judges.

POLITZ, Chief Judge:[*]

This appeal involves questions of property ownership under Texas law, of

legal and equitable title, and of the proper application of the Texas recording statute

in the factual scenario presented herein. Concluding that the trial court erred in

---

[*] Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

holding that Carl Mueller owned only a one-half interest in the subject property, we reverse the grant of summary judgment in favor of the Internal Revenue Service. For the reasons assigned we render summary judgment in favor of Carl Mueller.

Background

On November 1, 1979 Carl G. Mueller, Jr. and his son Clint purchased a piece of property near Houston, Texas known as the Braewick property. Carl paid the earnest money, down payment, and closing costs totaling $9,548.85. The remaining consideration consisted of a purchase money first mortgage in the sum of $58,000 signed by both Carl and Clint Mueller. It appears that Clint was included as a signatory on the note in order to secure a more favorable interest rate.[1] The warranty deed was properly recorded on November 19, 1979.

On December 5, 1979 Clint executed a deed conveying his interest in the property to his father. The instrument was "executed effective as of November 1, 1979." Carl expressly agreed therein to assume Clint's obligations on the $58,000 note. Clint and his wife Karen then promptly moved onto the Braewick property under an unrecorded written lease. Carl thereafter made all mortgage payments on the property and paid for all subsequent repairs, taxes, and insurance. Carl did not

---

[1] A lower interest rate was available if a party to the purchase money mortgage on the property was going to occupy the property. Carl attested that he planned to allow Clint and his wife Karen to lease the property.

record the December 1979 deed, however, until January 1994 when he sold the property.

Unbeknownst to Carl, in January of 1987 the IRS filed a Notice of Federal Tax Lien in Harris County, Texas for the unpaid taxes of Clint and Karen for the years 1984 and 1985. The IRS filed additional tax liens through May 1993.

In December 1993, preparatory to selling the property, Carl paid the sum of $48,214.27 in full satisfaction of the purchase money mortgage. As noted, the following month he recorded the December 1979 deed. Believing the property free of encumbrances, on May 26, 1994 Carl closed the sale for the sum of $35,587.64. The IRS immediately seized one-half of the proceeds, $17,793.82, in partial satisfaction of its tax liens against Clint and Karen Mueller.

Carl filed the instant wrongful levy action against the IRS. Competing motions for summary judgment were filed. The IRS contended that by virtue of the Texas recording statute its tax liens had priority over the late-recorded December 1979 conveyance from Clint to his father. Carl contended that Clint never had an interest in the property to which the tax liens could attach and, even if he did, the IRS could not take advantage of the Texas recording statute because it was not a creditor "without notice." Finally, Carl maintained that when he paid the purchase money note he had become subrogated to the mortgagee's position which primed

3

the tax liens. The district court rejected Carl's motion and granted that of the IRS, holding that Clint owned an undivided one-half interest in the subject property. Carl timely appealed.

Analysis

A.    Standard of Review

We review a summary judgment *de novo*, applying the same standards used by district courts in such matters.[2] The court must review the facts and draw inferences in favor of the nonmoving party.[3] Summary judgment is only proper when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.[4]

B.    Notice Under the Texas Recording Statute

We previously have held[5] that the IRS could avail itself of the Texas recording statute[6] in the filing of a tax lien. We reject the contention of the IRS

---

[2] **Brock v. Chater**, 84 F.3d 726 (5th Cir. 1996).

[3] **Elliott v. Lynn**, 38 F.3d 188 (5th Cir. 1994).

[4] Fed.R.Civ.P. 56(c); **Celotex Corp. v. Catrett**, 477 U.S. 317 (1986).

[5] **United States v. Creamer Indus.**, 349 F.2d 625 (5th Cir. 1965).

[6] Tex.Prop. Code Ann. § 13.001(a) (Vernon Supp. 1997). The statute provides in relevant part:

  A conveyance of real property or an interest in real property or a mortgage

advanced herein, however, that it somehow is exempt from the notice provisions of that statute.[7]  The recording statute requires that a creditor be without actual, constructive, or inquiry notice of the conveyance that it seeks to avoid, in this instance the 1979 deed from Clint to his father.[8]

Mueller produced evidence that the IRS was on notice of his claim to full title to the property because his tax returns reflected his son's rental payments, his son's bankruptcy petition did not list the property, and the original deed did not specify the proportions of ownership thus creating the potential that he and his son did not have equal ownership.  We need not consider each contention in excessive detail for we are persuaded beyond peradventure that no lending institution likely would have relied on an ambiguous deed if offered as collateral by the son, nor would any purchaser or Texas title company accept same as dispositive if the son

---

deed of trust is void as to a creditor or to a subsequent purchaser for a valuable consideration without notice unless the instrument has been acknowledged, sworn to, or proved and filed for record as required by law.

[7] **Paris Grocer Co. v. Burks**, 101 Tex. 106, 105 S.W. 174 (1907) (specifically holding that creditors, like purchasers, must be "without notice" to avoid an unrecorded deed under the recording statute); see also **Prewitt v. United States**, 792 F.2d 1353 (5th Cir. 1986) (applying the "without notice" requirement to the IRS).

[8] **Harrison v. Boring**, 44 Tex. 255 (1875); **Wethered v. Boon**, 17 Tex. 143 (1856). These cases treat "inquiry notice" as a subset of various forms of constructive notice. Semantics aside, however, the IRS is charged with knowledge of whatever a reasonable inquiry would have revealed.  **Woodward v. Ortiz**, 150 Tex. 75, 237 S.W.2d 286 (1951).

were purporting to sell his half interest.[9] Prudence compels that more specific facts

be determined.  On this ground alone, the summary judgment in favor of the IRS

must be reversed.

Carl contends that he is entitled to summary judgment.  We must determine

exactly what interests Carl and Clint acquired in the original purchase because, to

satisfy Clint's tax obligations, the IRS may reach only the portion of the property

that Clint acquired therein.  At this stage of the inquiry, the Texas recording statute

is irrelevant.[10]

The IRS contends that it may rely on an irrebuttable presumption of equal

interests when grantees take under a deed that is silent as to the respective interests.

---

[9] See **Collum v. Sanger Bros.**, 98 Tex. 162, 82 S.W. 459 (1904) (holding that facts placing a purchaser on inquiry notice will also place a creditor on inquiry notice).

[10] The IRS appears to contend that the Texas recording statute somehow prevents Carl from arguing that Clint took no title in the original conveyance.  The recording statute, however, only protects the IRS from a subsequent unrecorded conveyance of an interest in land of which it had no notice.  See Tex. Prop. Code Ann. § 13.001.  It is well settled that "the superiority of [an equitable] title may be asserted against a judgment lien holder even though he had no notice of the equitable title at the time of fixing his lien." **Gibralter Savings Ass'n v. Martin**, 784 S.W.2d 555, 558 (Tex.App. -- Amarillo 1990, writ denied); see also **Johnson v. Darr**, 114 Tex. 516, 272 S.W. 1098 (1925); **Park Central Bank v. JHJ Investments Co.**, 835 S.W.2d 813 (Tex.App. --Fort Worth 1992, no writ); **Jensen v. Bryson**, 614 S.W.2d 930 (Tex.Civ.App. -- Amarillo 1981, no writ); **Northeast Indep. School Dist. v. Aldridge**, 528 S.W.2d 341 (Tex.Civ.App. -- Amarillo 1975, writ ref'd n.r.e.); **Scull v. Davis**, 434 S.W.2d 391 (Tex.Civ.App. -- El Paso 1968, writ ref'd n.r.e.).  Stated another way, the recording statute cannot affect an equitable title, which cannot be recorded, that was acquired in the original conveyance.

The district court apparently accepted this contention. We are mindful that a presumption of equal ownership initially arises when a deed is silent as to the respective interest of the grantees.[11] We are also mindful of the proposition that "where two or more persons join in the purchase of property, they will, in the absence of an agreement to the contrary, hold title in the proportion in which each furnished consideration for the purchase."[12]

The summary judgment record fully supports Carl's contention that it was never intended that his son would have an ownership interest in the property. In addition to the December deed, in which Clint conveyed all interests in the property and Carl assumed full responsibility for the purchase price effective back to the date of the original deed, it is not disputed that Carl made all payments -- all payments involved in the original transaction, all payments for interim mortgage, taxes, insurance, and repair and upkeep expenses, as well as the entirety of the mortgage satisfaction payment.

We are persuaded that although Carl and Clint originally took legal title, Carl

---

[11] **Wooley v. West**, 391 S.W.2d 157 (Tex.Civ.App.--Tyler 1965, writ ref'd n.r.e.). The case relied upon by the district court, **Zephyr v. Zephyr**, 679 S.W.2d 553 (Tex.App.--Houston [14th Dist.] 1984, no writ), likewise so holds.

[12] 16 Tex.Jur.3d Cotenancy & Joint Tenancy § 9 (1981); see also **Wooley**; **Bray v. Clark**, 9 S.W.2d 203 (Tex.Civ.App.--Waco 1928, writ dism'd w.o.j.).

alone had the equitable title. We understand such a situation to be covered by what, under Texas law, is referred to as a purchase money resulting trust.

> A resulting trust arises by operation of law when title is conveyed to one person but the purchase price or a portion thereof is paid by another. The parties are presumed to have intended that the grantee hold title to the use of him who paid the purchase price and whom equity deems to be the true owner.[13]

"'From a practical viewpoint, a resulting trust involves primarily the operation of the equitable doctrine of consideration -- the doctrine that valuable consideration and not legal title determines the equitable title or interest resulting from a transaction. . . .'"[14]

The summary judgment record abounds with the accepted indicators that a resulting trust was effectuated. As noted, the payments at original closing, the prompt execution of a deed reflecting the true legal status, the lease from father to son, the interim payments, and the final mortgage payout all substantiate the existence of a resulting trust. Clint's only obligation as the trustee of the resulting

---

[13] **Lifemark Corp. v. Merritt**, 655 S.W.2d 310, 316 (Tex.App.--Houston [14th Dist.] 1983, writ ref'd n.r.e.) (citing **Cohrs v. Scott**, 161 Tex. 111, 338 S.W.2d 127 (1960)); see also **Elliot v. Mansfield**, 398 S.W.2d 442 (Tex.Civ.App.--Beaumont 1965, writ ref'd n.r.e.) (holding that when property is transferred to one but paid for by another, a presumption of resulting trust arises).

[14] **Mills v. Gray**, 147 Tex. 33, 210 S.W.2d 985 (1948) (quoting 54 Am.Jur. Trusts § 188 (1945)).

trust was to convey legal title to his father.[15]  This he promptly did.

This leads then to a consideration of the relative equities of the parties to this litigation, for fairness and public policy considerations predominate when considering the propriety of a resulting trust.[16]  The IRS placed its first tax liens in the Harris County deed records in January 1987.  At that time approximately $50,000 remained unpaid on the mortgage.  Had the IRS attempted to execute on the property it would have been unsuccessful because the mortgage lien was superior to its tax liens.  The IRS waited seven years until Carl, unaware of its intentions, made the land marketable by paying off the mortgage in its entirety.  The IRS then quickly confiscated one-half of the sales proceeds.  During this seven-year interval Carl kept up with all mortgage payments, insurance, taxes, and other expenses.  To allow the IRS to retain the benefits of these efforts would result in unjust enrichment, which is something the resulting trust doctrine is designed to remedy.[17]

---

[15] **Nolana Dev. Ass'n v. Corsi**, 682 S.W.2d 246 (Tex. 1984); George T. Bogert, The Law of Trusts and Trustees § 454 (2d ed. 1991) (noting that claims of a resulting trust are often confirmed by a deed from the legal title holder to the payer of the purchase price).

[16] See **Eastham v. Roundtree**, 56 Tex. 110 (1882) (holding that no resulting trust can spring from an act contrary to public policy); **Bute v. Stickney**, 160 S.W.2d 302 (Tex.Civ.App.--San Antonio 1942, writ ref'd w.o.m.) (holding that party seeking resulting trust must come with clean hands).

[17] **Nolana Dev. Ass'n**.

For the foregoing reasons, we REVERSE the summary judgment in favor of

the IRS and RENDER judgment in favor of Carl G. Mueller, Jr.